```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

FREDERIC A. BOURKE, JR.,            :
and FIREMAN'S FUND INSURANCE CO.,   :
as subrogee of FREDERIC A.          :
BOURKE, JR.,                        :
                                    :
     Plaintiffs,                    :
                                    :
v.                                  :    CASE NO. 3:14cv843(DFM)
                                    :
MAN ENGINES & COMPONENTS, INC.,     :
                                    :
     Defendant.                     :

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs, Frederic A. Bourke, Jr. ("Bourke") and Fireman's Fund Insurance Company ("Fireman's Fund"), as subrogee of Bourke, bring this diversity action against defendant MAN Engines & Components, Inc. ("MAN") alleging that defendant breached express and implied warranties in connection with two diesel marine engines that defendant sold to Bourke. Pending before the court is defendant's motion for summary judgment against sole remaining plaintiff Fireman's Fund. (Doc. #97.)[1] For the reasons set forth below, the motion is GRANTED.[2]

---

[1] Defendant initially filed its motion for summary judgment against both Bourke and Fireman's Fund, but after reaching a settlement with Bourke, it withdrew its motion for summary judgment against Bourke (doc. #109), and Bourke and MAN entered a stipulation of dismissal, which the court granted. (Doc. #116 and #117).

[2] On January 29, 2015, the parties consented to the jurisdiction of a magistrate judge. (Doc. #39; see 28 U.S.C. § 636(c); Fed.R.Civ.P. 73(b)).

I.  Factual Background

The following facts, drawn from the parties' Local Rule 56(a) statements and exhibits, are undisputed.

MAN distributes and sells diesel marine engines designed and manufactured by MAN Truck and BUS, AG. (Defendant's Local Rule 56(a)(1) Statement ("Def. SOF"), Doc. #102, ¶ 4; Plaintiff's Local Rule 56(a)(2) Statement ("Pl. SOF"), Doc. #105, ¶ 4.)  MAN sold two MAN Truck and BUS, AG diesel marine engines (the "engines") to Bourke for installation on Bourke's motor yacht, MV Midnight. (Def. SOF ¶ 6; Pl. SOF ¶ 6.)  Each of the engines has a component part called an intercooler. (Def. SOF ¶¶ 8-8; Pl. SOF ¶¶ 8-9.) The intercoolers cool the hot charge air coming from Turbo chargers of the engines by using sea water from the ocean, which circulates through the web of tubes in the intercoolers.  (Def. SOF ¶¶ 10-11; Pl. SOF ¶¶ 10-11.)  The cooled air then circulates into the engine where it is compressed and injected by diesel fuel. (Def. SOF ¶ 12; Pl. SOF ¶ 12.)

Although the date of purchase is unclear,[3] the parties agree that the Limited Warranty for New Common Rail Marine Diesel

---

[3] The parties indicate that the engines were either purchased or first put into use on April 3, 2009. (Def. SOF ¶ 7; Pl. SOF ¶ 7.)

2

Engines (the "Limited Warranty") went into effect on April 3, 2009 and expired on April 3, 2011. (Def. SOF ¶¶ 15-17; Pl. SOF ¶¶ 15-17.) The Extended Service Protection Warranty (the "Extended Service Contract") went into effect on July 8, 2009. (Def. SOF ¶ 21; Pl. SOF ¶ 21.) Pursuant to the Extended Service Contract, the extended warranty expired "on April 3, 2014 or 2500 hours, whichever comes first." (Def. SOF ¶ 21; Pl. SOF ¶ 21.) On September 16, 2012, after the expiration of the Limited Warranty, but before the Extended Service Contract expired, the engines failed. (Def. SOF ¶ 27; Pl. SOF ¶ 27.) Plaintiff sought repairs pursuant to the warranties. MAN authorized certain repairs which were performed by MAN-authorized service dealer Casco Bay Diesel & Electric of Portland, Maine ("Casco Bay"). (Def. SOF ¶ 28; Pl. SOF ¶ 28.) Casco Bay then performed additional repairs, which defendant says were unauthorized and plaintiff maintains were "implicitly authorized." (Def. SOF ¶ 29; Pl. SOF ¶ 29.)

II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is a fact that influences the case's outcome under governing law. Anderson v. Liberty Lobby,

3

Inc., 477 U.S. 242, 247–48 (1986). A "genuine" dispute is one that a reasonable jury could resolve in favor of the non-movant. Id. The moving party bears the initial burden of establishing that there are no genuine disputes as to any material fact. Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). Once such a showing is made, the non-movant must show that there is a genuine issue for trial. Id. The court may rely on admissible evidence only, Spiegel v. Schulmann, 604 F.3d 72, 81 (2d Cir. 2010), and must view the evidence in the record in the light most favorable to the non-movant, drawing all reasonable inferences in that party's favor. Weinstock, 224 F.3d at 41.

III. Discussion

Defendant MAN moves for summary judgment against subrogated plaintiff Fireman's Fund on its claims of breach of express warranty (Count II) and breach of implied warranties (Count IV) against MAN due to MAN's alleged failure to reimburse Fireman's Fund for certain repairs to Bourke's motor yacht. (Compl., Doc. #1.) Defendant MAN argues that the Connecticut Product Liability Act, Conn. Gen. Stat. § 52-572m et seq. ("CPLA") is the exclusive remedy in Connecticut for plaintiff's breach of express and implied warranty claims. Defendant maintains that plaintiff failed to plead, and cannot prove, the necessary

elements of the CPLA. Therefore, defendant argues that it is entitled to summary judgment. (Doc. #98 at 4-7, 12-15.)

Plaintiff does not respond at all to defendant's argument that the CPLA governs plaintiff's claims and that plaintiff has not pleaded the necessary elements of a breach of warranty claim under the CPLA. Instead, plaintiff states, without more, only that the "complaint sounds in contract." (Doc. #104 at 2.)

The court agrees with defendant, as discussed below.

A. <u>The Complaint is Governed by the CPLA.</u>

Plaintiff pleaded two counts against MAN: breach of express warranty and breach of implied warranty (Compl., Counts II, IV). By its terms, the CPLA governs these claims. Conn. Gen. Stat. § 52-572m(b) defines a product liability claim as follows:

> "Product liability claim" includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product. "Product liability claim" shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; <u>breach of warranty, express or implied</u>; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent.

Conn. Gen. Stat. § 52-572m(b) (emphasis added). <u>See, e.g.</u>, <u>Mountain W. Helicopter, LLC v. Kaman Aerospace Corp.</u>, 310 F.

Supp. 2d 459, 463 (D. Conn. 2004) (in which the court held that "causes of action brought pursuant to CUTPA, strict liability, negligence, breach of warranty, and misrepresentation complaint are governed by the Connecticut Product Liability Act ('CPLA')").

It is well-settled that the CPLA is the exclusive remedy for plaintiff's claims of breach of warranty. The CPLA provides: "A product liability claim as provided [in the CPLA] ... may be asserted and <u>shall be in lieu of all other claims against product sellers</u>, including actions of negligence, strict liability and warranty, for harm caused by a product." Conn. Gen. Stat. § 52-572n(a)(emphasis supplied).

> According to the Connecticut [S]upreme [C]ourt, this statutory language, generally referred to as the exclusivity provision, makes the CPLA the <u>exclusive means</u> by which a party may secure a remedy for an injury caused by a defective product. In other words, the legislature clearly intended to make our products liability act an exclusive remedy for claims falling within its scope.

<u>Mountain West Helicopter, LLC v. Kaman Aerospace Corp.</u>, 310 F. Supp. 2d at 463 (citations and internal quotation marks omitted)(emphasis in original). "Thus, a plaintiff may not assert a cause of action against the seller of a product for harm caused by the product except within the framework of the CPLA." <u>LaMontagne v. E.I. Du Pont De Nemours & Co., Inc.</u>, 41

F.3d 846, 855 (2d Cir. 1994)(citing Daily v. New Britain Machine Co., 200 Conn. 562, 571-72, 512 A.2d 893, 899 (1986)).

"Although the CPLA provides the exclusive remedy for product liability claims, it was not meant to alter the substance of a plaintiff's rights and it does not preempt all common law theories of product liability; rather, the CPLA bars separate common law causes of action in product liability cases." Fraser v. Wyeth, Inc., 857 F. Supp.2d 244, 252 (D. Conn. 2012). "'A plaintiff bringing a cause of action under the CPLA therefore retains the right to allege traditional theories of recovery under one unified CPLA claim' like breach of express and implied warranty." Kuzmech v. Werner Ladder Co., No. 3:10CV266 (VLB), 2012 WL 6093898, at *12 (D. Conn. Dec. 7, 2012)(quoting Fraser v. Wyeth, 857 F. Supp. at 252). Therefore, although plaintiff pleaded its breach of warranty claims as separate counts, the court treats plaintiff's claims as a single cause of action under the CPLA with multiple theories. Id.

B. MAN is a Product Seller Under the CPLA.

Initially, the court must determine whether defendant is a product seller under the CPLA. "Whether [a] defendant is a 'product seller' is a question of law for the court to decide." Svege v. Mercedes-Benz Credit Corp., 329 F. Supp. 2d 272, 278

(D. Conn. 2004) (citations and internal quotation marks omitted). The CPLA provides that:

> "Product seller" means any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption. The term "product seller" also includes lessors or bailors of products who are engaged in the business of leasing or bailment of products.

Conn. Gen. Stat. § 52-572m(a).

Although plaintiff now asserts that MAN is not a product seller within the meaning of the CPLA ( Pl. SOF ¶ 5), plaintiff pleaded in the complaint that defendant MAN "was engaged, <u>inter alia</u>, in the business of designing, manufacturing, selling, servicing, maintaining and repairing marine engines." (Compl. ¶ 3.) In its Local Rule 56(a)(1) Statement, defendant MAN asserts:

> An entity which is separate from MAN, but with which MAN is affiliated, MAN Truck and BUS, AG ("MAN Germany") designs and manufactures diesel marine engines. MAN was engaged in the business of distributing and selling MAN Germany designed and manufactured diesel marine engines at all times relevant to this matter.

(Def. SOF ¶¶ 3-4.) In its Local Rule 56(a)(2) Statement, Plaintiff admitted this fact. (Pl. SOF ¶¶ 3-4.) There is no genuine of issue of fact. As a matter of law, defendant MAN is a "product seller" under Conn. Gen Stat. § 51-572m(a).[4]

---

[4] In its Local Rule 56 (a)(1) Statement, MAN also asserts that it is a "product seller" under Conn. Gen Stat. § 51-572m(a). (Def. SOF ¶ 5.) Plaintiff denies this statement

C. <u>Proof of a Defect Is an Essential Element of Breach of Warranty Claims Under The CPLA and Plaintiff Has Failed to Introduce Any Admissible Evidence to Prove That The Intercoolers Were Defective.</u>

Defendant argues that proof of a defect is a necessary element of all claims under the CPLA and that plaintiff has failed to prove a defect. Plaintiff disagrees, and as discussed below, belatedly attempts to create an issue of fact as to whether the product was defective.

In any products liability action, under any theory of liability, "the plaintiff must plead and prove that the product was defective and that the defect was the proximate cause of the plaintiff's injuries." <u>Haesche v. Kissner</u>, 229 Conn. 213, 218 (1994) (citation and internal quotation marks omitted). <u>See, e.g.</u>, <u>Merrimack Mut. Fire Ins. Co. v. Watkins Mfg. Co.</u>, No.

---

without explanation, stating only "Denied. MAN is not a 'product seller' under Conn. Gen. Stat. § 51-572m(a)." (Pl. SOF ¶ 5.) Plaintiff's denial is immaterial because the issue of whether MAN is a product seller is a question of law for the court to decide based on the facts. (<u>See</u> discussion above.) Furthermore, plaintiff's denial is ineffective, as plaintiff failed to cite an affidavit or other admissible evidence in support of its denial, and thus it is deemed admitted. <u>See</u> D.Conn.L.Civ.R. 56(a)(3). "When a party fails to appropriately deny material facts set forth in the movant's Rule 56(a)(1) statement, those facts are deemed admitted." <u>Buell v. Hughes</u>, 568 F. Supp. 2d 235, 237 (D. Conn. 2008) (citing <u>SEC v. Global Telecom Servs. L.L.C.</u>, 325 F.Supp.2d 94, 109 (D. Conn. 2004).

3:13CV123 (JBA), 2015 WL 3397844, at *6 (D. Conn. Sept. 23, 2015)(denying summary judgment and finding plaintiff's claims "fail as a matter of law" where "the experts designated by [the plaintiff] have not disclosed opinions sufficient to satisfy plaintiff's burden of proving a design defect."); Kuzmech v. Werner Ladder Co., 2012 WL 6093898, at *13 (holding with regard to a claim involving a woman's fall from a ladder, that "[b]ecause Plaintiffs have failed to create a genuine issue of material fact in dispute as to the ladder's defects, they likewise cannot create a genuine issue of material fact in dispute as to either their breach of express or implied warranty claims").

"A product may be defective due to a flaw in the manufacturing process, a design defect or because of inadequate warnings or instructions." Vitanza v. Upjohn Co., 257 Conn. 365, 373 (2001).

> Within the strict liability rubric, Connecticut recognizes a trifecta of product defects: (1) manufacturing defects; (2) design defects; and (3) warnings defects. Generally speaking, a manufacturing defect is a mistake in the assembly process, which results in a product that differs from the manufacturer's intended result. A design defect, in contrast, exists when the product is otherwise properly manufactured, but is nonetheless unreasonably dangerous because its attributes can cause unexpected injury. A product is defectively designed if: (1) it failed to perform as safely as an ordinary consumer would expect when used in a reasonably foreseeable manner (the "ordinary consumer expectations" test); or (2) in the case of complex

products, the risk of danger inherent in the design of the product outweighs its utility (the "modified consumer expectations" test. Lastly, a warning defect exists when a product is unreasonably dangerous because it lacks adequate warnings or instructions concerning the product's dangerous propensities. In such cases, the failure to warn itself makes the product defective.

Moss v. Wyeth Inc., 872 F. Supp. 2d 162, 166 (D. Conn. 2012)(citations omitted). Connecticut courts have held that:

Although it is true that an ordinary consumer may, under certain circumstances, be able to form expectations as to the safety of a product; we nonetheless consistently have held that "expert testimony is required when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors."

White v. Mazda Motor of Am., Inc., 139 Conn. App. 39, 49 (2012), aff'd, 313 Conn. 610 (2014) (citations omitted)(affirming trial court's grant of summary judgment in dealership's and manufacturer's favor where plaintiff automobile owner's sole expert could not provide an opinion that the vehicle was defective); see also Metropolitan Property & Casualty Ins. Co. v. Deere & Co., 302 Conn. 123, 141 (2011)(citation omitted) (holding that "[i]f lay witnesses and common experience are not sufficient to remove [a] case from the realm of speculation, the plaintiff will need to present expert testimony to establish a prima facie case").

In White, the plaintiff was injured in an automobile fire. His sole expert "only offered an opinion as to how the fire in

11

the vehicle may have started. He did not offer an opinion that the vehicle was defectively designed or manufactured." White v. Mazda Motor of Am., Inc., 139 Conn. App. at 49-50. Further, plaintiff's expert "specifically testified that he is not an expert in automobile mechanics, automobile electronics, the design or manufacture of any automobile components related to fuel line designs of automobiles or the manufacture of automobiles." Id. The appellate court concluded that "in addition to the expert's opinion on causation,

> the plaintiff was required to provide the opinion of another expert that established sufficient prima facie evidence of the contested product liability issues in the case, e.g., that the vehicle was in a defective condition unreasonably dangerous to the consumer or user, that the defect or defects caused the injury for which compensation was sought, that the defect or defects existed at the time of the sale and that the vehicle after its manufacture was expected to and did reach the consumer without any substantial change in its condition.

Id. at 50-51. The Appellate Court found that the plaintiff had failed to do so, and affirmed the trial court's grant of summary judgment in favor of the defendants. Id. at 51.

In this case, as in White v. Mazda Motor, the questions at issue regarding the failure of the marine engines, "present complex questions outside of the ordinary knowledge and experience of jurors," (White v. Mazda Motor, 139 Conn. App. at 49) and as such, expert testimony is required to establish that

12

the intercoolers were defective.  Defendant argues that
plaintiff's experts fail to do so, and the court agrees.

Here, plaintiff alleges that the engines failed, allowing
seawater to infiltrate the engines (Compl., Doc. # 1, ¶¶ 11-12),
and it asserts in its response to the summary judgment motion
that "the only plausible explanation for the premature failure
of the intercoolers is that they were somehow defective."  (Doc.
#104 at 3.)   To the contrary, however, plaintiff's experts,
testified at their depositions that they could not say that the
intercoolers were defective.  Specifically, plaintiff's expert
Jon C. Bardo testified:

> Q.  And so you're not going to testify as to whether or not
> the failure was caused by, for example, a defect in the
> design of the engine—of the intercooler; correct?
> A.  I believe that's out of my – out of my league.
> Q.  Okay. And you're not going to testify as to whether or
> not the crack was caused by some sort of defect in the
> manufacturing process; correct?
> A.    Correct.

(Affidavit of James E. Regan ("Regan Aff."), Def. Ex. H, Doc.
#101-8, Bardo Dep. at 20-21. See also Def. SOF. at ¶¶ 34-35.)
Likewise, plaintiff's second expert, Edwin M. Davis, did not
provide any opinion as to whether the intercoolers were
defective:

> Q.  No. 1, based on review of your report, it's my
> understanding that you are going to testify today that the
> intercoolers cracked and, therefore, caused damage to the
> engines.  Is that fair?

13

> A. That is what we concluded from our investigation.
> Q. Okay. And you will testify today if asked regarding the testing that was done to determine, in fact, that there was - - that there were cracks in the two intercoolers; correct?
> A. Yes.
> Q. What you're not able to testify to today is what was the actual cause of the crack in the intercoolers; correct?
> A. That is correct.
> Q. You will not testify to today whether the intercoolers themselves are covered by any warranties; correct?
> A. I don't know anything about that.
> Q. All right. And you similarly don't know whether or not any work done that was done following the crack and failure of the intercoolers - - you're not going to testify as to whether any of that work was covered by a warranty; correct?
> A. That's correct.
> Q. You are not able to testify as to whether or not the intercoolers were defective; correct?
> A. That's correct.
> Q. You will not testify as to whether or not the intercoolers were defectively designed; correct?
> A. Right.
> Q. You will not testify as to whether the intercoolers were subject to a manufacturing defect; correct?
> A. Correct.

(Regan Aff., Def. Ex. G, Doc. #101-7, Davis Dep. at 19-20. <u>See also</u> Def. SOF. at ¶¶ 36-38.)

In its response to defendant's summary judgment motion, in an apparent effort to create a material issue of fact, plaintiff submitted a new affidavit from Mr. Bardo. (Doc. #106, ex. 4.) This affidavit directly contradicts his deposition testimony. In particular, Mr. Bardo states:

> Although I am not able to identify the specific defect in the intercoolers that caused the closed tubes to crack, or determine whether the defect occurred as a result of how

14

> the intercoolers were built or designed, I am able to state, within a reasonable degree of certainty, that there is no other plausible explanation for the intercoolers' closed tubes to crack in less than four (4) years of use with less than 1000 hours of running time <u>other than from an unidentified defect of some kind.</u>

(Doc. #106, ex. 4, ¶ 16.)(Emphasis added.) An affidavit like this one, submitted to create a "sham issue of fact" is inadmissible.

> "The Second Circuit follows the rule that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." <u>Ferraresso v. Town of Granby</u>, 646 F.Supp.2d 296, 301 (D. Conn. 2009) (citations and internal quotation marks omitted); <u>see also</u> <u>Mack v. United States</u>, 814 F.2d 120, 124 (2d Cir. 1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.").

<u>Larobina v. Wells Fargo Bank, N.A.</u>, No. 3:10CV01279 (MPS), 2014 WL 3419534, at *2, <u>aff'd</u>, 632 Fed. Appx. 55 (2d Cir. 2016)(refusing to consider portions of an affidavit directly contradicting a plaintiff's prior deposition testimony regarding out of pocket medical costs). See also, <u>In re Fosamax Products Liab. Litig.</u>, 707 F.3d 189, 193–94 (2d Cir. 2013)(holding that the District Court was entitled to disregard an expert witness' new affidavit testimony based on the "sham issue of fact" doctrine, which prohibits a party from defeating summary

15

judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony).

As the Second Circuit has recognized:

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

Mack v. United States, 814 F.2d 120, 124-25 (2d Cir. 1987)(quoting Perma Research and Development Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969)). This doctrine applies equally to fact and expert witnesses:

> Although we have typically applied the sham issue of fact doctrine where a party submits an affidavit that contradicts the party's own prior statements, it may also apply when a party attempts to use evidence from an expert witness to defeat summary judgment. See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 736 (2d Cir.2010) (holding that plaintiffs' expert report that contradicted plaintiffs' prior representations was insufficient to defeat motion for summary judgment).

In re Fosamax Products Liab. Litig., 707 F.3d at 193-94.

In sum, plaintiff has not introduced any competent expert testimony that the intercoolers were defective,[5] as it must, and

---

[5] Although plaintiff did not discuss the "malfunction doctrine," this court notes that:

> "Under the malfunction doctrine, a plaintiff may establish a prima facie case of product defect by proving that the product failed in normal use under circumstances suggesting a product defect. Put otherwise, a product defect may be inferred by circumstantial evidence that (1) the product

therefore, cannot meet the essential requirements of a claim under the CPLA. See Haesche v. Kissner, 229 Conn. at 218; White v. Mazda Motor, 139 Conn. App. at 46; Merrimack Mut. Fire Ins. Co., 2015 WL 3397844 at *6.

On this record, there is no genuine issue of material fact and MAN is entitled to summary judgment on all counts of the complaint.[6]

---

      malfunctioned, (2) the malfunction occurred during proper use, and (3) the product had not been altered or misused in a manner that probably caused the malfunction. The malfunction doctrine may be described less formally as providing that a plaintiff need not establish that a specific defect caused an accident if circumstantial evidence permits an inference that the product, in one way or another, probably was defective. . . . Although the malfunction doctrine may come to a plaintiff's rescue when circumstances fairly suggest the responsibility of a product defect, it is hornbook law that proof of a product accident alone proves neither defectiveness nor causation. Nor does further proof that the accident was caused by a malfunction suffice to prove these elements. The crucial additional showing required of a plaintiff in a malfunction case is the negation of causes for the malfunction other than a product defect."

Fallon v. The Matworks, 50 Conn. Supp. 207, 217–18 (Super. Ct. 2007) (quoting D. Owen, "Manufacturing Defects," 53 South Carolina L.Rev. 851, 871–74 (2002)). Even were this court to consider Mr. Bardo's subsequent affidavit, plaintiff could not prove the requirements of the malfunction doctrine, as Mr. Bardo's subsequent affidavit does not negate any other possible causes for the malfunction other than a defect.

    [6]In light of this conclusion, the court need not address plaintiff's arguments regarding breach of contract, in particular plaintiff's claim that the text of the Extended Service Warranty and the Limited Warranty are ambiguous. Suffice to say, however, that this court does not agree. The

IV. Conclusion

For the foregoing reasons, defendant's motion for summary judgment (doc. #97) is GRANTED.

SO ORDERED at Hartford, Connecticut this 28th day of March, 2018.

                                                _____/s/_____
                                                Donna F. Martinez
                                                United States Magistrate Judge

---

Extended Service Warranty and the Limited Warranty, by their terms, do not include the intercoolers. (See Regan Aff., Ex. C., Doc. #101-3 and Ex. E, Doc. #101-5.)